## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
JAIME ANTONIO ALVAREZ FIGUEROA,         )
                                        )
              Petitioner,               )
                                        )
v.                                      )          Civil Action
                                        )        No. 18-10097-PBS
                                        )
JOSEPH D. MCDONALD, JR., ANTONE         )
MONIZ, and THOMAS BROPHY,               )
                                        )
              Respondents.              )
_____)

### MEMORANDUM AND ORDER

May 14, 2018

Saris, C.J.

### INTRODUCTION

Petitioner Jaime Antonio Alvarez Figueroa, who was born in El Salvador, has lived in the United States for 13 years. His two-year-old daughter is a United States citizen. Petitioner has been in Immigration and Customs Enforcement ("ICE") custody since April 26, 2017, when he reported to Chelsea District Court for a pretrial hearing on misdemeanor criminal charges. ICE was waiting at the courthouse and detained him.

Alvarez Figueroa initially filed a habeas petition pursuant to 28 U.S.C. § 2241 on January 18, 2018, requesting that this Court set bond for him while his immigration proceedings were pending. See Docket No. 1 at 6-7. Respondents moved to dismiss

1

the petition on February 13, 2018. <u>See</u> Docket No. 14. After new counsel was appointed for Petitioner, he filed an amended petition, claiming that (1) ICE was refusing to transport him to his criminal proceedings in state court, (2) his year-long detention was unreasonable and therefore unconstitutional, and (3) his detention was unlawful because he had not received a constitutionally adequate bond hearing in immigration court. <u>See</u> Docket No. 33 ¶¶ 26-43. Petitioner opposed the motion to dismiss. <u>See</u> Docket No. 34. The government filed supplemental briefing on the merits of the amended claims. <u>See</u> Docket No. 39; Docket No. 45.

On May 2, 2018, the Court held a hearing on the motion to dismiss and the merits of Alvarez Figueroa's petition. That same day, the Court ordered ICE to transport Alvarez Figueroa to all future hearings for the state criminal charges. <u>See</u> Docket No. 41 at 1-2. That order disposed of Counts I and II in the amended petition, as it granted the relief requested. <u>See</u> Docket No. 33 ¶¶ 26-33. Two additional counts remain before the Court: the claim of unreasonably prolonged detention, and the claim of an unconstitutional bond hearing. <u>See</u> Docket No. 33 ¶¶ 34-43.

After a hearing and a review of the briefs, the Court **<u>DENIES</u>** Respondents' motion to dismiss (Docket No. 14). The Court **<u>ALLOWS</u>** the habeas petition, and **<u>ORDERS</u>** that Petitioner be released from detention, unless the immigration court holds a

2

bond hearing within 14 days where the government bears the burden of proving that Alvarez Figueroa must be detained because he is dangerous or a flight risk.

## FACTUAL BACKGROUND

Alvarez Figueroa is 29 years old and originally from El Salvador. Docket No. 33 ¶ 12. He arrived in the United States in 2005, fleeing threats from gang members in El Salvador and seeking to join his mother and siblings who already lived in this country. See Docket No. 33 ¶¶ 12-13; Docket No. 1 at 10. Alvarez Figueroa was detained when he entered the United States and later released on a bond. Docket No. 1 at 10. He then traveled to East Boston, where he resided until the time of his detention by ICE. Docket No. 1 at 10.

Petitioner's entire family lives in the Boston area, and his youngest sibling is a United States citizen. Docket No. 33 ¶ 13. Alvarez Figueroa also has a daughter, born in July 2016, who is a United States citizen. Docket No. 33 ¶ 13; Docket No. 1 at 12. He married the mother of his child, Tatianna Chavez, on May 2, 2018. See Docket No. 42. Before he was detained, Alvarez Figueroa worked as the head cook at Ginger Exchange, a restaurant with locations in Cambridge and Boston, to support Chavez and his daughter. Docket No. 33 ¶ 13; Docket No. 1 at 12-13.

On March 20, 2017, Alvarez Figueroa was arrested for driving without a license, operating under the influence, and possession of an open alcohol container in a vehicle. Docket No. 33 ¶ 14. He had never been arrested prior to that date. Docket No. 33 ¶ 14. He was arraigned in Chelsea District Court on the day of his arrest, and released on personal recognizance. Docket No. 33 ¶ 14. When he reported to Chelsea District Court for a pretrial hearing on April 26, 2017, ICE took him into custody outside the courthouse. Docket No. 33 ¶ 15.

Petitioner had a custody redetermination hearing in front of an Immigration Judge ("IJ") on June 27, 2017. Docket No. 33 ¶ 17. The IJ placed the burden of proof on Alvarez Figueroa and denied his request for release, finding that he had failed to prove that he was not a danger to the community in light of the pending misdemeanor charges. Docket No. 33 ¶ 17. Petitioner did not appeal the IJ's bond decision to the Board of Immigration Appeals ("BIA"). See Docket No. 15-4 ¶ 5. Since April 26, 2017, Alvarez Figueroa has been detained at the Plymouth County Correctional Facility and was unable to attend any pretrial hearings in his state criminal matter prior to filing this habeas petition. Docket No. 33 ¶ 15.

Alvarez Figueroa was ordered removed on July 18, 2006, but he never received notice of a hearing and did not find out about the removal order until he was arrested by ICE in 2017. See

4

Docket No. 33 ¶ 16; Docket No. 1 at 9. Based on the lack of
notice, Petitioner filed a motion to reopen his immigration
proceedings, which the IJ granted on June 1, 2017. Docket No. 33
¶ 16. Alvarez Figueroa's asylum application was denied by the IJ
on November 29, 2017. Docket No. 33 ¶ 18. His timely appeal is
now pending before the BIA. Docket No. 33 ¶ 18.

**DISCUSSION**

I.   **Motion to Dismiss**

     A.   **Legal Standard**

     To survive a motion to dismiss under Fed. R. Civ. P.
12(b)(1), the plaintiff has the burden of establishing that
subject-matter jurisdiction exists. See Calderón-Serra v.
Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013). "When a
district court considers a Rule 12(b)(1) motion, it must credit
the plaintiff's well-pled factual allegations and draw all
reasonable inferences in the plaintiff's favor." Merlonghi v.
United States, 620 F.3d 50, 54 (1st Cir. 2010). "The district
court may also 'consider whatever evidence has been submitted,
such as the depositions and exhibits.'" Id. (quoting Aversa v.
United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).

     B.   **Subject-Matter Jurisdiction**

     Respondents first argue that, to the extent Petitioner is
asking this Court to review the IJ's discretionary decision to
deny his release, jurisdiction is precluded by 8 U.S.C.

§ 1226(e). See Docket No. 15 at 4-7. Congress has eliminated judicial review of discretionary custody determinations. See 8 U.S.C. § 1226(e). Section 1226(e) states: "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Id. This provision has been held to bar an alien's challenge to "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." Demore v. Kim, 538 U.S. 510, 516 (2003).

What § 1226(e) does not bar, however, are constitutional challenges to the immigration bail system. See Jennings v. Rodriguez, 138 S. Ct. 830, 841 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); Demore, 538 U.S. at 517; see also Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas.'" (quoting Gutierrez-Chavez v. INS, 298 F.3d 824, 829 (9th Cir. 2002))).

The Court's jurisdiction is not barred by § 1226(e) in this case. Alvarez Figueroa is not challenging the IJ's discretionary decision to keep him in detention. Instead, he is arguing that immigration bond hearings, in which aliens detained pursuant to § 1226(a) must prove they are not dangerous and are not flight

6

risks to be released, are unconstitutional. See Docket No. 33 ¶¶ 39-43; Docket No. 34 at 23-26. This type of constitutional claim "falls outside of the scope of § 1226(e)" because it is not a matter of the IJ's discretionary judgment. Jennings, 138 S. Ct. at 841. Thus, this Court has subject-matter jurisdiction over Alvarez Figueroa's habeas petition.

### C.    Exhaustion of Administrative Remedies

Respondents also argue that the Court should decline to exercise jurisdiction because Petitioner chose not to appeal the IJ's bond determination to the BIA. See Docket No. 15 at 8-10. Petitioner opposes, maintaining that prudential exhaustion is not appropriate in this case. See Docket No. 34 at 7-9.

There is no statutory exhaustion requirement to which Alvarez Figueroa must adhere. See Flores-Powell v. Chadbourne, 677 F. Supp. 2d 455, 463 (D. Mass. 2010). While Petitioner did not appeal the IJ's detention decision to the BIA, the agency would not have had jurisdiction to consider his due process arguments even if they had been presented. See id. (holding that exhaustion of constitutional claim is "excused by the BIA's lack of authority to adjudicate constitutional questions"). Furthermore, any appeal to the BIA would be futile based on the burden allocation holding of In re Guerra, 24 I. & N. Dec. 37 (BIA 2006). See id. at 38. For these reasons, the Court does not require Alvarez Figueroa to exhaust his administrative remedies.

See <u>McCarthy v. Madigan</u>, 503 U.S. 140, 146-49 (1992) (listing "circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion," including instances where it would be futile), <u>superseded by statute on other grounds</u>, Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 803, 110 Stat. 1321.

## II.   **Merits of the Habeas Petition**

### A.   **Legal Framework for Bond Hearings**

Alvarez Figueroa is detained under 8 U.S.C. § 1226(a). Pursuant to that provision, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When the alien is not a criminal alien, the Attorney General may continue to detain him or may release him on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or "conditional parole." <u>Id.</u> § 1226(a)(1)-(2). After ICE makes the initial decision to detain an alien, the alien may request a custody redetermination hearing from an IJ at any time before a removal order becomes final. 8 C.F.R. § 236.1(d)(1). The IJ's bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f). Notably, § 1226(a) is silent as to whether the government or the alien bears the burden of proof at a custody redetermination hearing and what

amount of evidence would satisfy that burden. <u>See</u> 8 U.S.C. §
1226(a).

That statutory silence has been interpreted by the BIA,
however. The BIA has held that, in a custody redetermination
hearing under § 1226(a), "[t]he burden is on the alien to show
to the satisfaction of the [IJ] that he or she merits release on
bond." <u>Guerra</u>, 24 I. & N. Dec. at 40; <u>accord</u> <u>In re Adeniji</u>, 22
I. & N. Dec. 1102, 1116 (BIA 1999) (holding that "respondent
must demonstrate that his release would not pose a danger to
property or persons, and that he is likely to appear for any
future proceedings").[1] The alien must show that he is not "a
threat to national security, a danger to the community at large,
likely to abscond, or otherwise a poor bail risk." <u>Guerra</u>, 24 I.
& N. Dec. at 40. Since <u>Adeniji</u>, the BIA has repeatedly
reaffirmed that the burden should be on the alien. <u>See</u> <u>Matter of
Fatahi</u>, 26 I. & N. Dec. 791, 793 (BIA 2016); <u>Guerra</u>, 24 I. & N.
Dec. at 40.

---

[1]    The language of the burden and standard of proof is drawn
from a regulation regarding immigration officers authorized to
issue arrest warrants. <u>See</u> 8 C.F.R. § 236.1(c)(8) (requiring the
alien to "demonstrate to the satisfaction of the officer" that
he is neither dangerous nor a flight risk to be released). The
BIA has applied the burden allocation and standard of proof in
8 C.F.R. § 236.1(c)(8) to bond determinations by IJs. <u>See</u>
<u>Adeniji</u>, 22 I. &. N. Dec. at 1112-13.

Recently, the Supreme Court has addressed the procedures required in a custody redetermination hearing under § 1226(a). See Jennings, 138 S. Ct. at 847–48. In that case, the class had originally argued that, absent a requirement for periodic bond hearings, 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) would violate the Due Process Clause. See id. at 839. Instead of addressing the constitutional argument, however, the Ninth Circuit employed the canon of constitutional avoidance and interpreted § 1226(a) to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 847. But the Supreme Court held that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." Id. (emphasis added). The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. See id. at 851.

Thus, while the Supreme Court has held that § 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, it left open the question of whether the Due Process Clause does. Petitioner asks the Court to answer that question today.

### B.   Analysis

Petitioner maintains that the Constitution requires an immigration bond hearing at which the government must prove by clear and convincing evidence that an alien is dangerous or poses a flight risk before the alien can be detained. See Docket No. 33 ¶¶ 40-41. Essentially, Alvarez Figueroa asks this Court to hold that his initial bond redetermination hearing violated the Due Process Clause because the IJ placed the burden of proof on him, pursuant to Adeniji and Guerra.

The Fifth Amendment's Due Process Clause mandates that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court has held that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693.

At least one circuit has already held that, in § 1226(a) custody hearings, the Constitution mandates that (1) the burden must be placed on the government and (2) the standard is clear

and convincing evidence. See Singh, 638 F.3d at 1203[2]; see also
Doe v. Smith, Civil No. 17-11231-LTS, 2017 WL 6509344, at *6 (D.
Mass. Dec. 19, 2017) (noting that "in some circumstances, due
process requires noncitizens whose detention has become
unreasonably prolonged to be afforded bond hearings at which
[the government] bears the burden of proving dangerousness or
risk of flight by clear and convincing evidence"); see generally
Mary Holper, The Beast of Burden in Immigration Bond Hearings,
67 Case W. Res. L. Rev. 75 (2016) (arguing that the current
burden allocation does not comport with the Due Process Clause).

        In Singh, the Ninth Circuit reasoned that "due process
requires 'adequate procedural protections' to ensure that the
government's asserted justification for physical confinement
'outweighs the individual's constitutionally protected interest
in avoiding physical restraint.'" Singh, 638 F.3d at 1203
(quoting Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d
942, 950 (9th Cir. 2008)). The Ninth Circuit held that the

---

[2]     Prior to Singh, the Ninth Circuit had employed the canon of
constitutional avoidance to construe § 1226(a) as requiring the
Attorney General to provide a bond hearing to an alien detained
for a prolonged period. See Casas-Castrillon v. Dep't of
Homeland Sec., 535 F.3d 942, 951 (9th Cir. 2008). This statutory
holding does not survive Jennings. See Jennings, 138 S. Ct. at
847-48 (looking at the text of § 1226(a) and refusing to read
procedural protections into it). However, in Jennings, the
Supreme Court did not address the Ninth Circuit's constitutional
holding in Singh about the burden and standard of proof when a
hearing does occur. See Cortez v. Sessions, No. 18-cv-01014-DMR,
2018 WL 1510187, at *9 (N.D. Cal. Mar. 27, 2018).

government is the party who must prove detention is justified. See id.; cf. Foucha v. Louisiana, 504 U.S. 71, 81-82 (1992) (striking down Louisiana statute for continued detention of defendants acquitted based on insanity under the Due Process Clause because "the statute place[d] the burden on the detainee to prove that he is not dangerous," and civil commitment required the government to prove by clear and convincing evidence that an individual needed to be detained). In the case of a deprivation of liberty in the immigration context, the Ninth Circuit further held that the clear and convincing evidence standard was necessary "[b]ecause it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual' . . . is so significant." Singh, 638 F.3d at 1203-04 (quoting Addington v. Texas, 441 U.S. 418, 427 (1979)).

Here, citing Demore, the government argues that detained immigrants' due process rights are not as weighty as those of pretrial detainees or civil committees. In that case, a criminal alien who conceded that he was deportable was subject to mandatory detention pending his removal proceedings under 8 U.S.C. § 1226(c). See Demore, 538 U.S. at 513-14. Before enacting that statutory provision, Congress had found that over 20 percent of deportable criminal aliens who had been released on bond failed to appear for their removal proceedings. Id. at

13

519-20. Moreover, one study showed that 77 percent of deportable criminal aliens were arrested again upon release, and 45 percent were arrested multiple times. Id. at 518-19. Noting that mandatory detention under § 1226(c) was Congress's response to those findings, the Supreme Court reiterated that "[d]etention during removal proceedings is a constitutionally permissible part of that process." Id. at 531. The Court further held that no individualized bond hearing was constitutionally necessary, because "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." Id. at 528, 531.

But Demore is not applicable here because it involved criminal aliens subject to mandatory detention. In contrast, this case involves a different statutory section, § 1226(a), which permits release of non-criminal aliens pending their removal proceedings. The Supreme Court has not yet determined what process is due when an IJ does hold an individualized bond hearing for non-criminal aliens.

Zadvydas provides some guidance, although it too deals with a different question: indefinite detention in the post-removal period. There, the Supreme Court explained that it had "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." Zadvydas, 533 U.S. at 690-91. The Court then cited

14

to criminal pretrial detention and civil commitment cases, making it clear that one important procedural protection for preventive detention is the placement of the burden of proof on the government. See id. at 691 (comparing United States v. Salerno, 481 U.S. 739 (1987), in which Court upheld Bail Reform Act, with Foucha, in which Court struck down civil detention statute with burden on detainee).

With the guideposts of Zadvydas and Demore, this Court holds that the Constitution requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings. Requiring a non-criminal alien to prove that he is not dangerous and not a flight risk at a bond hearing violates the Due Process Clause. See Singh, 638 F.3d at 1203. In cases where a non-criminal alien's liberty may be taken away, due process requires that the government prove that detention is necessary. See Foucha, 504 U.S. at 81-82; Addington, 441 U.S. at 427. This is especially true when individuals may be detained for extended periods of time. See Jennings, 138 S. Ct. at 860 (Breyer, J., dissenting) (stating that class members had been detained for periods ranging from six months to 831 days while pursuing asylum petitions).

Alvarez Figueroa argues that the standard of proof in bond hearings under § 1226(a) must be clear and convincing evidence to provide due process. This challenge presents a more difficult

15

question in light of the Supreme Court's holding that the
government need not use the "least burdensome means to
accomplish its goal" to comport with the Due Process Clause.
Demore, 538 U.S. at 528. Currently, the alien must prove "to the
satisfaction of the [IJ]" that he is neither dangerous nor a
flight risk. Guerra, 24 I. & N. Dec. at 40. If that same burden
were placed on the government, the Court is not persuaded that
that standard would violate the Due Process Clause. Even in
Zadvydas, the Supreme Court did not require clear and convincing
evidence to justify continued immigration detention in the post-
removal period. See Zadvydas, 533 U.S. at 701 ("[O]nce the alien
provides good reason to believe that there is no significant
likelihood of removal in the reasonably foreseeable future, the
Government must respond with evidence sufficient to rebut that
showing.").

Finally, Petitioner must show he was prejudiced by the
constitutional error. See Singh, 638 F.3d at 1205-06. If the
government had borne the burden of proof, the IJ arguably would
not have found Alvarez Figueroa to be dangerous based on three
unresolved misdemeanor charges from a single incident. But see
Maldonado-Velasquez v. Moniz, 274 F. Supp. 3d 11, 13 (D. Mass.
2017) (finding immigration detainee challenging burden
allocation was not prejudiced when detainee had four arrests and
nine charges, including carrying a dangerous weapon, possession

of ammunition, and assault with a dangerous weapon). A bond

hearing with the correct burden allocation is therefore

warranted.[3]

**ORDER**

The Court **DENIES** Respondents' motion to dismiss (Docket No.

14). The Court **ALLOWS** the habeas corpus petition with respect to

the unconstitutional bond hearing claim. Petitioner shall be

released from detention unless the immigration court holds a new

custody hearing, within 14 calendar days after entry of this

order, at which the government must prove that Alvarez

Figueroa's detention is necessary because he is dangerous or a

flight risk. A contemporaneous record of the bond

redetermination hearing shall be maintained.


/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

---

[3]    The Court need not decide now whether Petitioner's one-year
detention has become unreasonably prolonged under the Due
Process Clause. See Jennings, 138 S. Ct. at 847-48, 851 (leaving
open question of whether periodic bond hearings are
constitutionally necessary for § 1226(a) detainees). The Court's
order for a new bond hearing at which the government must
justify Alvarez Figueroa's continued detention may render the
prolonged detention claim moot.